FILED
CLERK, U.S. DISTRICT COURT
5/14/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| UNITED STATES OF AMERICA, | No. CR  2:24-cr-00306-PA |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 371: Conspiracy to Solicit, Receive, and Pay Illegal Remuneration for Health Care Referrals; 42 U.S.C. § 1320a-7b(b)(1)(B): Illegal Remuneration for Health Care Referrals; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| TRACIE JACKSON, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1347, 2]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   Defendant TRACIE JACKSON was a resident of Los Angeles, California.

2.   Defendant JACKSON owned, controlled, and operated We Connect U Today, Inc. ("WCUT"), located in Hawthorne,

California.  WCUT had a bank account at Pacific Western Bank ending in 4809 (the "Pacific Western Account").  Defendant JACKSON was an authorized signer on the Pacific Western Account.

3.   Hospice 1 was an in-home hospice company located in Arleta, California.

4.   Physician 1 was a hospice physician who worked for Hospice 1.

5.   Pharmacy 1 was a pharmacy located in Northridge, California.  Pharmacy 1 was an enrolled Medicare provider and submitted claims to Medicare for payment, including claims for reimbursement for drugs purportedly prescribed and dispensed to patients of Hospice 1 and other hospices.

6.   Pharmacy 1 had a bank account at Bank of the West ending in 1056 (the "Bank of the West Account").  Co-conspirator 1 was an owner of Pharmacy 1 and an authorized signer on the Bank of the West Account.

The Medicare Program

7.   Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

8.   Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."  Each Medicare beneficiary was given a Health Identification Card Number ("HICN") unique to that beneficiary.

9. Medicare was divided into four parts: hospital insurance (Part A); medical insurance (Part B); Medicare Advantage (Part C); and prescription drug benefits (Part D). Medicare Part D subsidized the cost of medically necessary prescription drugs.

10. Medicare beneficiaries obtained Part D benefits in two ways: (a) by joining a prescription drug plan, which covered only prescription drugs, or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services (collectively, "Part D Plans"). Part D Plans were sponsored by private companies, often referred to as drug plan "sponsors," that were approved by Medicare ("Medicare Drug Plan Sponsors").

11. Medicare and Medicare Drug Plan Sponsors were each a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

12. Pharmacies, physicians, hospices, and other health care providers who provided services to beneficiaries that were reimbursed by Medicare were referred to as "providers."

13. A pharmacy could participate in Medicare Part D by entering into an agreement: (a) directly with a Medicare Drug Plan Sponsor; (b) with one or more Pharmacy Benefit Managers ("PBMs"); or (c) with a Pharmacy Services Administration Organization ("PSAO"). A PBM acted on behalf of one or more drug plans. Through a drug plan's PBM, a pharmacy could join a drug plan's network. A PSAO contracted with PBMs on behalf of the pharmacy.

14. When a beneficiary presented a prescription to a pharmacy, and the pharmacy dispensed the medication to the beneficiary, the pharmacy, in turn, submitted a claim either directly to the Medicare Drug Plan Sponsor or to a PBM that represented the beneficiary's Medicare drug plan. The Medicare Drug Plan Sponsor or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The Medicare Drug Plan Sponsor reimbursed the PBM for its payments to the pharmacy.

<u>Dihydroergotamine Mesylate</u>

15. Dihydroergotamine Mesylate ("dihydroergotamine") was a prescription drug used to treat migraine headaches.

B. <u>THE SCHEME TO DEFRAUD</u>

16. Beginning in or around April 2018, and continuing through at least in or around October 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant JACKSON, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly, willfully, and with intent to defraud, executed and willfully caused to be executed a scheme and artifice: (1) to defraud a health care benefit programs, namely, Medicare and Medicare Drug Plan Sponsors, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (2) to obtain money from health care benefit programs, namely, Medicare and Medicare Drug Plan Sponsors, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of

material facts in connection with the delivery of and payment for health care benefits, items, and services.

17. The scheme to defraud operated, in substance, as follows:

    a. Defendant JACKSON solicited and agreed to receive illegal kickbacks from Pharmacy 1, in exchange for ordering and arranging for and recommending the ordering of medically unnecessary prescriptions, including dihydroergotamine, to be dispensed by Pharmacy 1 to Medicare beneficiaries.

    b. To obtain confidential Medicare beneficiary information for the illegal kickback scheme with Pharmacy 1, defendant JACKSON, through her company WCUT, recruited for hospice care Medicare beneficiaries that she knew were not terminally ill and did not qualify for hospice services.

    c. By recruiting Medicare beneficiaries for hospice services, defendant JACKSON and her co-conspirators gained access to information about Medicare beneficiaries, including their HICNs.

    d. Defendant JACKSON provided HICNs and other confidential information to Hospice 1 and other hospices for Medicare beneficiaries to receive purported hospice services that defendant JACKSON knew were not medically necessary.

    e. Defendant JACKSON, through WCUT, was paid over $250,000 by Hospice 1 and other hospices.

    f. Defendant JACKSON further provided employees of Hospice 1 and other hospices with false and fraudulent prescription orders for medications, including dihydroergotamine.

g.  Defendant JACKSON made false and fraudulent representations to employees at Hospice 1 and other hospices that the fraudulent prescriptions submitted to Pharmacy 1 were ordered by Physician 1, when, in fact, defendant JACKSON knew that Physician 1 had not ordered and prescribed the medication and had not seen and evaluated the Medicare beneficiaries.

h.  Defendant JACKSON then directed the employees at Hospice 1 and other hospices to send the fraudulent prescriptions to Pharmacy 1.  Defendant JACKSON did so, knowing and intending Pharmacy 1 would submit false and fraudulent claims to Medicare for the medication specified in the fraudulent prescriptions, including dihydroergotamine, that was procured by the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented.

i.  Defendant JACKSON received illegal kickbacks and bribes from Pharmacy 1 in exchange for the false and fraudulent prescriptions sent to Pharmacy 1 on behalf of Medicare beneficiaries.

j.  To conceal and disguise the kickbacks and bribes paid by Pharmacy 1 to defendant JACKSON in exchange for defendant JACKSON providing prescriptions and orders for medications for Medicare beneficiaries, defendant JACKSON, through WCUT, entered into sham contracts and agreements, including a sham marketing agreement, with Pharmacy 1.

k.  Pharmacy 1 dispensed the medications specified in the false and fraudulent prescriptions, including dihydroergotamine, to Medicare beneficiaries, and, in some

instances, by providing the medication to a relative of defendant JACKSON to be delivered to the Medicare beneficiaries.

18.  Medicare reimbursed Pharmacy 1 for the false and fraudulent claims submitted based on fraudulent prescriptions defendant JACKSON caused to be sent to Pharmacy 1, including paying approximately $853,000 for claims associated with dispensing dihydroergotamine.

C.  EXECUTIONS OF THE SCHEME TO DEFRAUD

19.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendant JACKSON, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully executed and attempted to execute the fraudulent scheme described above by submitting and causing to be submitted the following false and fraudulent claims to Medicare from Pharmacy 1:

| COUNT | BENEFICIARY | MEDICATION | DATE CLAIM SUBMITTED | APPROX. AMOUNT PAID |
|---|---|---|---|---|
| ONE | E.H. | Dihydroergotamine | 5/30/2019 | $6,544.10 |
| TWO | J.P. | Dihydroergotamine | 7/16/2019 | $6,544.10 |
| THREE | T.H. | Dihydroergotamine | 7/16/2019 | $3,024.09 |
| FOUR | R.A. | Dihydroergotamine | 7/16/2019 | $3,023.69 |

                        COUNT FIVE

                       [18 U.S.C. § 371]

20.  The Grand Jury incorporates paragraphs 1 through 15 and 17 of this Indictment here.

A.  <u>OBJECT OF THE CONSPIRACY</u>

21.  Beginning in or around April 2018, and continuing through in or around December 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant JACKSON knowingly conspired with Co-conspirator 1, and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

    a.  To knowingly and willfully solicit and receive remuneration in return for ordering and arranging for and recommending ordering any item or service for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B); and

    b.  To knowingly and willfully offer and pay any remuneration to any person to order and arrange for and recommend ordering any item and service for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

B.  <u>MANNER AND MEANS OF THE CONSPIRACY</u>

22.  The objects of the conspiracy were carried out, and to be carried out, in substance, as set forth in paragraph 17 of this Indictment.

C.   OVERT ACTS

23.  On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant JACKSON, Co-conspirator 1, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1: On June 24, 2019, defendant JACKSON received an illegal kickback of approximately $10,650.42 from Pharmacy 1 in exchange for arranging the ordering of prescription drugs.

Overt Act No. 2: On July 24, 2019, defendant JACKSON received an illegal kickback of approximately $15,460.46 from Pharmacy 1 in exchange for arranging the ordering of prescription drugs.

Overt Act No. 3: On August 19, 2019, defendant JACKSON received an illegal kickback of approximately $5,617.44 from Pharmacy 1 in exchange for arranging the ordering of prescription drugs.

Overt Act No. 4: On October 24, 2019, defendant JACKSON received an illegal kickback of approximately $6,172.00 from Pharmacy 1 in exchange for arranging the ordering of prescription drugs.

## COUNTS SIX THROUGH NINE

[42 U.S.C. § 1320a-7b(b)(1)(B)]

24. The Grand Jury incorporates paragraphs 1 through 15 and 17 of this Indictment here.

25. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant JACKSON knowingly and willfully solicited and received remuneration, namely, wire transfers in the amounts set forth below, which constituted kickbacks for ordering and arranging for and recommending the ordering of prescription medications, for which payment could be made in whole and in part under a Federal health care program, namely, Medicare and Medicare Drug Plan Sponsors:

| COUNT | APPROX. DATE | PAYOR | RECIPIENT | APPROX. AMOUNT |
|---|---|---|---|---|
| SIX | 6/24/2019 | Pharmacy 1 (Bank of the West Account) | JACKSON (Pacific Western Account) | $10,650.42 |
| SEVEN | 7/24/2019 | Pharmacy 1 (Bank of the West Account) | JACKSON (Pacific Western Account) | $15,460.46 |
| EIGHT | 8/19/2019 | Pharmacy 1 (Bank of the West Account) | JACKSON (Pacific Western Account) | $5,617.44 |
| NINE | 10/24/2019 | Pharmacy 1 (Bank of the West Account) | JACKSON (Pacific Western Account) | $6,172.00 |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(7)]

1. Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7), in the event of the conviction of defendant TRACIE JACKSON of the offenses set forth in any of Counts One through Four or Six through Nine of this Indictment.

2. Defendant JACKSON, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant JACKSON, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of defendant JACKSON, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed

///

///

beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the conviction of defendant TRACIE JACKSON of the offense set forth in Count Five of this Indictment.

2. Defendant JACKSON, if so convicted, shall forfeit to the United States of America the following:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant JACKSON, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant JACKSON, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed

///

///

beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                   A TRUE BILL

                                          /s/
                                   _____
                                   Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
U.S. Department of Justice

SIOBHAN M. NAMAZI
Trial Attorney, Fraud Section
U.S. Department of Justice

CHRISTOPHER WENGER
Trial Attorney, Fraud Section
U.S. Department of Justice